

## NUMBER 13-07-00341-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

### IN THE ESTATE OF HOWARD ANTHONY FRENZEL, DECEASED

### On appeal from the County Court at Law of Kleberg County, Texas.

## MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Benavides
### Memorandum Opinion by Justice Benavides

On February 26, 2007, the County Court-at-Law of Kleberg County, Texas, (the "probate court") entered a "Final Judgment" on the Motion for Judgment filed by the appellees, Robert Frenzel and Elizabeth Sanders ("Robert" and "Elizabeth"). Appellant, Virginia Frenzel ("Virginia"), asserts four issues on appeal. Because we find that we do not have jurisdiction over the appeal, we do not address the merits of Virginia's issues.

### I. BACKGROUND

Robert and Elizabeth are children of the decedent, who died on December 22, 2004.

On January 11, 2005, Robert and Elizabeth filed an Application for Probate of Will and Issuance of Letters Testamentary, seeking to probate the 2002 will of the decedent, Howard Frenzel ("Howard"). On January 26, 2005, the constitutional county court admitted the will to probate and appointed Robert "Independent Executor." On September 28, 2005, Virginia, Howard's wife, filed a Motion to Transfer to the County Court at Law and Original Answer and Counterclaim. On October 21, 2005, the constitutional county court transferred the case to the probate court. *See* TEX. PROBATE CODE ANN. § 5(c) (Vernon Supp. 2008) ("In contested probate matters, the judge of the constitutional county court . . . shall on the motion of a party to the proceeding, transfer the proceeding to the county court at law . . . . The court to which the proceeding is transferred may hear the proceeding as if originally filed in the court.").

## A.    The Declaratory Judgment

On July 26, 2006, Robert and Elizabeth filed their Petitioners' First Amended Petition for Declaratory Judgment. Robert and Elizabeth sought the resolution of three issues. First, they challenged five deeds which Virginia filed for record after Howard's death. According to the allegations in the declaratory judgment action, the "five deeds were purportedly executed by [Howard], alone, or with [Virginia] on December 31, 1996 . . . ." The five deeds attempted to convey the properties listed in the deeds to Virginia and Howard as joint tenants with rights of survivorship. Robert and Elizabeth assert that the deeds and the corresponding joint tenancies with rights of survivorship are void: (1) for want of consideration, (2) for absence of delivery, (3) for attempting to convert community property into joint tenancies, and (4) for attempting to convert Howard's separate property into the community property of Howard and Virginia.

2

Robert and Elizabeth also moved the probate court to address the alleged conversion of Howard's separate property into community property. Robert and Elizabeth asserted that certain items of "personal property, cash, accounts in financial institutions, and other assets of [Howard's] were converted into the community property of [Howard and Virginia] as joint tenants with rights of survivorship." They claimed that these purported conveyances were void for want of consideration or inadequate consideration because "only Howard's separate property, and not [Virginia's], were [sic] converted to the community property of [Howard and Virginia] as joint tenants with rights of survivorship." Robert and Elizabeth sought a declaration that these purported conversions were void and without effect.

Finally, Robert and Elizabeth requested the probate court to resolve an issue concerning Howard's portion of the community property. They alleged that Virginia "wrongfully converted community property of [Howard] in the form of personal property, cash, accounts in financial institutions, and other assets of [Howard] to her own use." Robert and Elizabeth asked the probate court to declare that "such converted community property is part of [Howard's] estate."

## B. Mediation and Settlement Agreement

On August 22, 2006, the probate court ordered the dispute to mediation. On September 8, 2006, Robert and Elizabeth, as petitioners, and Virginia, as respondent, through their attorneys, signed a "Settlement Agreement" (the "Agreement"). The Agreement stated, in relevant part:

2. The consideration to be given for this settlement is as set forth in the attached Exhibit "A" which is incorporated herein by reference as if stated verbatim.

3

****

4.      The parties agree to release, discharge, and forever hold the other harmless from any and all claims, demands, or suits, known or unknown, fixed or contingent, liquidated or unliquidated, whether or not asserted in the above case, as of this date, arising from or related to the events and transactions which are the subject matter of this case.

****

6.      Attorney J. Clancy shall deliver drafts of any further settlement documents to the other parties by Sept. 2006. The parties agree to cooperate with each other in the drafting and execution of such additional documents as are reasonably requested or required to implement the terms and spirit of this agreement.

****

EXHIBIT "A"

****

(A)      A deed shall be prepared so as to convey and quitclaim title to the mother's lake house property into [sic] E. Sanders and R. Frenzel.

(B)      A deed shall be prepared so as to convey and quitclaim title to the 58 acre Austin County property to E. Sanders & [sic] R. Frenzel SUBJECT TO a 50% net proceeds interest in the property to Virginia Frenzel, her successor and assigns. "Net Proceeds" to be drafted so as to provide assurances of downside protection on the price on which any sale is based and to clarify what usual & [sic] customary costs are permitted to be offset against any sales price so to determine the net.

## C.    Motion for Judgment and "Final Judgment"

On January 8, 2007, Robert and Elizabeth filed a "Motion for Judgment," moving for judgment in accordance with the Agreement. On February 26, 2007, the probate court entered a "Final Judgment." The "Final Judgment" conveyed two properties, which were listed in the contested deeds and in the Agreement, to Robert and Elizabeth. However,

4

the "Net Proceeds" language in the "Final Judgment" referred to a "right of first refusal," but did not describe the "downside protection" required by the Agreement.  Additionally, the "Final Judgment" included a multitude of interlineations, including the strike-through of two clauses which purported to make the "Final Judgment" a final judgment.[1]  This appeal ensued.

## II. JURISDICTION

Before addressing appellant's claims, we must first determine whether we have jurisdiction.  *See In re Estate of Gaines*, 262 S.W.3d 50, 62 n.13 (Tex. App.–Houston [14th Dist.] 2008, no pet.); *H.E. Butt Grocery Co. v. Bay, Inc.*, 808 S.W.2d 678, 679 (Tex. App.–Corpus Christi 1991, writ denied).  Generally, a judgment must be final to be appealable. *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006).  "Probate proceedings are an exception to the 'one final judgment' rule; in such cases, 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues.'" *Id.* (quoting *Lehman v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001)); *see* TEX. PROBATE CODE ANN. § 5(g) (Vernon Supp. 2008) ("All final orders of any court exercising original probate jurisdiction shall be appealable to the courts of appeals.").  The supreme court has adopted the following test for determining the finality of orders in probate cases:

> [i]f there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.

---

[1] The two phrases were as follows:  (1) "ALL OTHER RELIEF NOT EXPRESSLY GRANTED IS DENIED," and (2) IT IS FURTHER ORDERED that this Final Judgment disposes of all contested matters between the parties in the Estate of Howard Anthony Frenzel . . . ."  (Emphasis in original.)

5

*Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995); *see De Ayala*, 193 S.W.3d at 578. The parties did not seek a severance order. *See Crowson*, 897 S.W.2d at 783 (suggesting that parties seek a severance order for purposes of finality, if the judgment meets the severance criteria). No statute expressly declares this "phase of the probate proceedings to be final . . . ." *See id.* Therefore, the "Final Judgment" will be final for purposes of appeal if it disposes "of all issues in the phase of the proceeding for which it was brought." *Id.* We conclude that it does not.

In their declaratory judgment, Robert and Elizabeth contested the validity of five deeds, the alleged conversion of Howard's separate personal property, and the alleged conversion of Howard's community personal property. However, the Agreement and the "Final Judgment," which was based on the Agreement, only resolved the issues related to two of the contested deeds. It did not address the remaining three deeds and the second and third issues regarding Howard's personal property that were raised in the action for declaratory judgment. The "Final Judgment" did not even expressly incorporate the Agreement; it merely attempted to draft the judgment to contain the real property provisions of the Agreement. For example, the Agreement provided that a deed would be drafted to provide Virginia with "downside protection" should one of the properties be sold; however, the "Final Judgment" provides for an undefined "right of first refusal" without addressing the "downside protection" requirement. *See H.E. Butt Grocery*, 808 S.W.2d at 680 ("A final judgment must also be certain, so that it can be enforced by writ of execution. Ministerial officers must be able to carry the judgment into execution without ascertainment of additional facts." (Internal citations omitted.))

6

As the act of striking through the finality language in the "Final Judgment" implies, we conclude that the "Final Judgment" does not dispose of all issues in the declaratory judgment, "the phase of the proceeding for which it was brought." *Crowson*, 897 S.W.2d at 783. Therefore, it is not a probate order that is final for purposes of appeal. *See id.*; *De Ayala*, 193 S.W.3d at 579. We conclude that we do not have jurisdiction over this appeal.

### III. CONCLUSION

Having determined that we do not have jurisdiction over this appeal, we DISMISS the appeal.

_____
GINA M. BENAVIDES,
Justice

Memorandum Opinion delivered and filed
this the 23rd day of July, 2009.